William H. ADDINGTON,
Plaintiff-Appellant,

v.

FARMER'S ELEVATOR MUTUAL IN-
SURANCE COMPANY, A Corpora-
tion, Defendant-Appellee.

No. 80–2284
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 13, 1981.

William H. Addington, pro se.

Thompson & Knight, James B. Harris, Dallas, Tex., for defendant-appellee.

Before BROWN, POLITZ, and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiff Addington, proceeding pro se in the district court and on appeal, seeks reversal of the district court's order granting the defendant's motion for summary judgment. The plaintiff filed a civil diversity action below, alleging that the defendant Farmland Mutual Insurance Company (Farmland)[1] subjected him to harassment by: (1) prosecuting a subrogation claim against Addington that was allegedly discharged upon Addington's adjudication as a bankrupt, and (2) attempting to enforce the allegedly invalid money judgment granted to the defendant on the basis of the subrogation claim. On appeal, the plaintiff admits that the defendant's subrogation claim was not discharged in bankruptcy, and he therefore waives his action alleging harassment on that basis. Rather, the plaintiff urges that the district court erred by refusing to allow him to amend his complaint to state another claim forming the basis for relief. We find no error below and affirm the summary judgment of dismissal.

*The Facts*

The plaintiff Addington formerly owned as sole stockholder the Addington Grain Company, Inc. (Addington Grain), a grain storage company. Sometime prior to 1965, the plaintiff issued a personal guaranty agreement. By it, he agreed to reimburse the Commodity Credit Corporation (Commodity) for any losses that it might suffer due to a shortage of its grain stored in the Addington Grain elevators.

In November of 1965, a shortage of Commodity grain was discovered at Addington Grain. Farmland (then Farmer's Elevator Mutual Insurance Company), as insurer for Commodity and pursuant to its blanket policy covering the obligation of the grain elevator/warehouseman, paid Commodity in the amount of its losses resulting from the grain shortage. Farmland was then subrogated to Commodity's right to recover losses from the plaintiff Addington.

On the basis of this subrogation claim, Farmland filed suit in federal district court in Kansas against Addington on August 7, 1967, to recover the outstanding amount paid to Commodity under the contract of insurance. On November 5, 1968, Adding-

---

1. The plaintiff incorrectly designated the defendant as "Farmer's Elevator Mutual Insurance Company."

ton filed bankruptcy and, on August 20, 1969, was discharged in bankruptcy. Aware that Addington had filed for bankruptcy and was adjudged bankrupt, Farmland continued to prosecute its separate suit against Addington, rather than to intervene in the bankruptcy proceedings.

On November 14, 1974, Farmland obtained in the federal district court a judgment against Addington for $303,038.00 plus costs (representing unrecovered amounts paid by it to Commodity due to grain shortage losses). Under the findings of fact and law in this suit, Addington had participated in causing the shortage, and the debt was not discharged by Addington's bankruptcy by virtue of Section 17(a)(2) of the former bankruptcy act (fraudulent acts). Addington did not appeal this judgment. Thereafter, on two separate occasions subsequent to entrance of its judgment, Farmland caused Addington to return to Kansas (from his home in Fort Worth, Texas) for examination (as the judgment debtor) in aid of execution of the money judgment. There is no indication in the appellate record that the judgment has been satisfied to date.

On March 2, 1979, Addington filed the present diversity suit in federal district court in Texas, alleging that he was subject to harassment by Farmland, through its attempts to execute upon the Kansas federal judgment, allegedly invalid on the basis of Addington's discharge in bankruptcy. Addington sought to recover damages thereby caused to him. (The proposed amended complaint at issue attacks this judgment as fraudulently obtained.)

On April 2, 1980, the defendant filed a motion for summary judgment. The grounds for the motion were that the subrogation claim was not discharged by Addington's adjudication as a bankrupt and, moreover, that Addington could not now collaterally attack the Kansas federal district court judgment.

The plaintiff responded, on April 10, 1980, with his own motion for summary judgment. Additionally, on April 11, 1980, the plaintiff filed a motion to amend his complaint to attack collaterally Farmland's Kansas federal district court judgment on the basis of fraud. In essence, the plaintiff contends in his proposed amended complaint that the defendant Farmland, the federal district judge presiding over the federal case in Kansas, and certain former employees of Addington Grain (one of whom, who had been convicted of embezzlement in connection with the missing grain, testified on Farmland's behalf in the prior case) conspired to have the federal district court judgment entered against him.

On October 9, 1980, the Texas federal district court held a hearing on the motions for summary judgment. On October 28, 1980, the district court granted the defendant's motion for summary judgment without express disposition of the plaintiff's motion to amend his complaint.

On appeal, the plaintiff abandoned any claim that the Kansas judgment was invalid on the basis that Farmland's subrogation claim was discharged in bankruptcy. Thus, the plaintiff's success on appeal rests on the validity of his attack directed to the Kansas judgment on the basis of fraud attempted to be asserted by the proposed amended complaint.

*Ruling on the Motion to Amend?*

At the hearing on the motions for summary judgment, the district court judge questioned Addington as to the facts forming the basis for his allegations of fraud as set forth in his proposed amended complaint. However, in presenting Farmland's case, counsel pointed out that, since the court had not granted the motion to amend, the issue of fraud was not before the court at the hearing on the motions for summary judgment. Counsel for Farmland argued its motion on the basis of Addington's allegations that the judgment was invalid due to his discharge in bankruptcy, but he also pointed out that the Kansas judgment was not subject to collateral attack in this Texas proceeding, as was sought by the proposed amended complaint. The district judge made no comment with regard to what it considered to be the posture at the time of hearing of Addington's amendment-asserted fraud claim.

Following hearing, the district court issued an order, stated to have been based on the pleadings, briefs, and oral argument. By it, the court granted the defendant's motion for summary judgment and dismissed the plaintiff's suit. No mention was made of the intended disposition of the plaintiff's motion to amend his complaint.

In order to determine the proper disposition of the plaintiff's appeal—which rests solely on the merits of the fraud in the Kansas federal district court suit which was first asserted by the proposed amended complaint—we must initially determine whether the district court's final order can be considered an implied denial of the motion to amend or whether, instead, the case must either be remanded for a ruling on his motion or else the summary judgment be set aside as (on the basis of the amendment) improvidently granted.

*Implied Denial of the Motion to Amend*

■ The denial of a motion by the district court, although not formally expressed, may be implied by the entry of final judgment (which is in effect an overruling of pending pretrial motions) or of an order inconsistent with the granting of the relief sought by the motion. *Agostino v. Ellamar Packing Co.*, 191 F.2d 576, 577 (9th Cir. 1951); *Mosier v. Federal Reserve Bank of New York*, 132 F.2d 710, 712 (2d Cir. 1942); see also *Cohen v. Curtis Publishing Co.*, 333 F.2d 974, 977 (8th Cir.), cert. denied 380 U.S. 921, 85 S.Ct. 923, 13 L.Ed.2d 808 (1965). Other decisions have recognized that this principle may be applicable, although not finding in the particular instance that the denial was so implied.[2]

■ We find that the district court's order of October 27, 1980, granting the defendant's motion for summary judgment and dismissing the plaintiff's suit, was so inconsistent with the plaintiff's request for leave to amend to state a new claim for relief as implicitly to deny the motion to amend. The district court itself noted at the hearing on the motion for summary judgment that the new grounds asserted by the proposed amended complaint constituted a collateral attack upon a judgment valid on its face, R.II at p. 23, and counsel for the defendant strongly argued the impropriety of that attack as barred by collateral estoppel and lack of recognized ground for collateral attack in another court than that which entered judgment, R.II at pp. 26–29.[3]

In light of our determination that the district court denied—by necessary implication—the plaintiff's motion to amend, we now direct our review to a determination of whether, as the plaintiff contends, the district court erred in so doing.

*Review of Denial of the Motion to Amend*

■ Leave to amend pleadings "shall be freely given when justice so requires," Fed.R.Civ.Proc. Rule 15(a). However, it is by no means automatic, *Layfield v. Bill Heard Chevrolet Company*, 607 F.2d 1097, 1099 (5th Cir. 1979), cert. denied 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980). Thus, the decision to grant or to deny a motion for leave to amend lies within the sound discretion of the trial court. *Layfield, supra.* Here, we find no abuse of discretion in the district court's failure to grant the plaintiff's motion for leave to amend.

■ In exercising its discretion, the trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981), *quoting from Foman v. Davis*,

---

2. See *United States v. Pan American World Airways, Inc.*, 299 F.2d 74, 76 (5th Cir. 1962), rev'd. on other grounds 382 U.S. 25, 86 S.Ct. 153, 15 L.Ed.2d 21 (1965); *Wimberly v. Clark Controller Company*, 364 F.2d 225, 227 (6th Cir. 1966).

3. The district court did grant the plaintiff's motion to adduce evidence of his former employees' conspiracy to embezzle money from the Addington Grain company accounts. The additional evidence in no way implicates Farmland or the federal district court judge in the embezzlement scheme.

371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Thus, the trial court may examine whether undue prejudice to the movant will result from denial of the motion. *Pan-Islamic Corporation v. Exxon Corporation*, 632 F.2d 539, 546 (5th Cir. 1980). Clearly, if the complaint as amended would still be subject to dismissal, no abuse of discretion occurs when amendment is denied. *Id.*

In his motion for leave to amend, the plaintiff attempted to establish a new factual basis and legal theory for his collateral attack on Farmland's Kansas federal court judgment. Coming as it did more than a year after Addington's institution of suit, after discovery had been terminated and after the defendant's motion for summary judgment (argued on the basis of the discharge in bankruptcy theory), the motion to amend, if granted, would in all likelihood, have caused prejudice to the defendant. Nor did the plaintiff attempt to justify his delay of more than a year in proposing the amended complaint.[4]

Moreover, the amendment sought was futile. The plaintiff was not prejudiced by the denial of the motion, because the plaintiff could not have defeated the defendant's motion for summary judgment on the basis of the amended complaint, if allowed. The amended complaint would have essentially alleged that Farmland conspired with the presiding federal judge, the insured Commodity, certain Addington Grain employees, and certain grain elevator inspectors, among others, to cause Addington to bear the burden created by the grain shortage in the Addington Grain elevators. The allegations of the amended complaint do not suggest that Farmland itself participated in producing the shortage of grain.[5] Farmland's participation in the alleged conspiracy is that it filed the suit to recover against Addington on his personal guaranty of any shortage, knowing that the shortage in 1965 was due to embezzlement and that Commodity (Farmland's insured) was a member of the conspiracy—a conspiracy that Addington allegedly could have proved if he had not been denied some Santa Fe Railroad records (denied by the Santa Fe railroad and the failure of discovery efforts by him on his behalf). Farmland is charged with joining in the fraud by using the same perjured testimony (that had previously been accepted as credible in the previous state and federal proceedings definitively decided adversely to Addington), and by knowing that Addington had moved to recuse the Kansas federal judge as biased.

■ The proposed amendment was, in effect, an attempt by Addington to assert an independent action for relief from the Kansas federal district court judgment on the basis of fraud or of a "fraud on the court".[6] In *Bankers Mortgage Company v. United States*, 423 F.2d 73 (5th Cir. 1970), cert. denied 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970), this circuit set forth essential elements of an independent action to obtain relief from a prior judgment:

(1) a judgment which ought not, in equity and good conscience, to be enforced;

---

**4.** At the 1980 hearing on the motions for summary judgment, the plaintiff stated that he had just recently found evidence of his former employees' attempts to embezzle money from Addington Grain prior to 1965. However, according to his hearing testimony, the plaintiff was aware at the time of the previous (Kansas) federal trial (1) that the trial judge was prejudiced against him and (2) that his former employee who testified on behalf of Farmland was then (allegedly) committing perjury.

**5.** Addington apparently attributes the shortage to the actions, unknown to him, of his employees. There is no allegation that Commodity participated in the shortage to get the insurance money and that Farmland, knowing this, paid the amount due under the contract of insurance in the hope of recovering the amount paid from Addington on the basis of his personal guaranty to Commodity. He does attempt to impute conspiratorial motives in the thwarting of his discovery efforts in the Kansas proceedings, although it is not clear how Commodity or Farmland could have prevented him from obtaining certain records in the possession of others.

**6.** Federal Rule of Civil Procedure Rule 60(b) recognizes that a court may entertain an independent action to relieve a party from a judgment, or to set aside a judgment for fraud upon the court.

(2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of defendant; and (5) the absence of any adequate remedy at law. *Id.* at 79, quoting from *National Surety Company v. State Bank*, 120 F. 593, 599 (8th Cir. 1903). As stated in *Bankers Mortgage*, "The independent action cannot be made a basis for the relitigation of issues" adjudicated by the judgment now sought to be annulled. 423 F.2d at 79.

We do not find that Addington's proposed amended allegations satisfy the requirements essential to an independent action to obtain relief from a prior judgment on the ground that it was fraudulently obtained. Addington's charge of bias on the part of the federal judge could have been remedied on appeal. The allegation that Farmland used perjured testimony in support of its case is an attempt to relitigate the credibility of the witnesses whose testimony was accepted (against a similar attack as now made) in the proceeding that resulted in the prior judgment. Finally, whether or not Addington was responsible for the Commodity grain shortage, he was ultimately responsible to Commodity for all losses suffered on the basis of his personal guaranty, although he would have been discharged in bankruptcy if his conduct had not been found to be fraudulently intentional collaboration with the witness (convicted of the embezzlement) whom he asserts now, as he did in the earlier trial, gave perjured testimony in implicating Addington.[7] Since it is not alleged that Farmland participated in the employees' alleged conspiracy to steal grain or otherwise embezzle from Addington Grain, Farmland's knowledge that the loss caused Commodity resulted from an illegal conspiracy on the part of Addington Grain employees is insufficient to characterize the suit for recovery of those losses as itself fraudulent.

In sum, the plaintiff has alleged no facts indicating that the issues raised were not open to litigation in the former action or that he was denied a fair opportunity to make his claim or defense in that action. His independent action for relief on the ground of fraud therefore fails. *Bankers Mortgage Company v. United States, supra,* 423 F.2d at 79.

■■■ Nor does Addington's proposed amendment establish a "fraud upon the court": he has alleged no scheme by which the integrity of the judicial process has been fraudulently subverted by a deliberately planned scheme in a manner involving "far more than an injury to a single litigant." *Hazel-Atlas Glass Company v. Hartford-Empire Company,* 322 U.S. 238, 245–246, 64 S.Ct. 997, 1002, 88 L.Ed. 1250 (1944). See also 7 Moore's Federal Practice ¶ 60.33 (1979); 11 Wright and Miller, Federal Practice and Procedure § 2870 (1973).

*Conclusion*

We find that: (1) the district court implicitly denied the plaintiff's motion for leave to amend his complaint, and (2) the district court did not abuse its discretion by denying the plaintiff's motion. Since the plaintiff abandoned on appeal the issue of the discharge in bankruptcy of Farmland's subrogation claim, the district court's granting of the defendant's motion for summary judgment is AFFIRMED.

---

**7.** The present proceedings show that Addington himself was indicted, but that he was ac-
quitted of criminal charges.