# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 20, 2009

Charles R. Fulbruge III
Clerk

Nos. 08-30339, 08-30349, 08-30536

LAWRENCE HARRINGTON; SANDRA HARRINGTON FAYARD; WILFRED MONTEGUE; CHRISTINA MONTEGUE; TERI WAGGONER; JUDITH A. YOUNG,

> Plaintiffs - Appellants,

v.

STATE FARM FIRE & CASUALTY COMPANY,

> Defendant - Appellee,

*consolidated with*:

JUSTIN BENIT; AUDREY BENIT; GEORGIA BIGELOW; CLARENCE BOURG; RUTH BOURG; ET AL.,

> Plaintiffs - Appellants,

v.

STATE FARM FIRE & CASUALTY COMPANY,

> Defendant - Appellee;

ANDRIA ARCENEAUX; JAY BOHRER; MAURICE OLIVIER; PAMELA PITRE; KEITH PITRE; ADRIAN SAPIA, SR.; JANET SAPIA,

> Plaintiffs - Appellants,

v.

STATE FARM FIRE & CASUALTY COMPANY,

> Defendant - Appellee.

Nos. 08-30339, 08-30349, 08-30536

———

Appeals from the United States District Court
for the Eastern District of Louisiana

———

Before GARWOOD, DAVIS, and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiffs-Appellants ("Appellants") in these consolidated cases sought recovery under their respective homeowner's policies for damage to their homes from Hurricane Katrina. The district courts read Appellants' complaints as seeking damage caused only by flood and dismissed the complaints under FED. R. CIV. P. 12(b)(6). We disagree with the district courts' interpretation of the complaints and conclude that Appellants also sought recovery for unpaid wind damage. We therefore reverse and remand for further proceedings.

## I. FACTS AND PROCEDURAL BACKGROUND

This consolidated appeal challenges judgments in three separate cases: *Harrington v. State Farm Fire & Casualty Company*, No. 08-30339; *Benit v. State Farm Fire & Casualty Company*, No. 08-30349; and *Arceneaux v. State Farm Fire & Casualty Company*, No. 08-30536.[1] All three suits sought to recover from Defendant-Appellee State Farm Fire & Casualty Company ("State Farm") under each plaintiff's homeowner's policy for damage to each plaintiff's home sustained in Hurricane Katrina. The complaints, amended complaints, and motions in all three cases are identical in all relevant respects. *Harrington* and

---

[1] *Harrington* and *Benit* were decided by the same district court, while *Arceneaux* was decided by another district court. Although there were two distinct courts, we refer to them in the singular from time to time throughout this opinion for the sake of simplicity because the relevant decisions were the same. Similarly, because the relevant portions of the complaints are identical, we often refer simply to "the complaint."

*Benit* share nearly identical procedural histories, while *Arceneaux* differs slightly.

Each suit was first filed in state court and later removed to the federal district court. In each of the cases, Appellants filed identical complaints, which attributed their property damage to "wind, wind driven rain, storm surge, overflowing of canals and breaches of levees." Appellants alleged that State Farm was responsible for the damage and that, instead of paying the full policy limits, "Defendant made only partial payment based upon wind and wind driven rain alone."

At the time they filed their complaints, this Court had ruled, a few weeks earlier, that standard homeowner insurance policies, like the policies at issue here, did not cover flood damage from Hurricane Katrina. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 214 (5th Cir. 2007).[2] Relying on this case, State Farm filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) in each of the suits for failure to state a claim upon which relief can be granted, arguing that this ruling foreclosed Appellants' only theory of recovery.[3] After filing its motion but before Appellants responded, State Farm filed an answer in each of the cases on January 3, 2008.

In each of the cases, Appellants filed what was labeled an "Opposition" to State Farm's Rule 12(b)(6) motion in mid-January 2008. At the same time Appellants filed a First Amended Complaint to clarify that they sought to recover for unpaid wind damage as well as flood damage. Appellants' opposition to the Rule 12(b)(6) motion expressly declined to address the merits of State Farm's motions. Instead, Appellants relied on the clarification in their First

---

[2] Subsequently, the Louisiana Supreme Court issued a similar ruling in *Sher v. Lafayette Insurance Co.*, 988 So. 2d 186, 194–96 (La. 2008).

[3] State Farm filed its 12(b)(6) motion on November 30, 2007 in *Benit* and on December 11, 2007 in *Harrington* and *Arceneaux*.

Amended Complaint making it clear that their suits sought unpaid wind damage in addition to flood damage.[4] However, because State Farm had already filed an answer in each of the cases (a fact that Appellants overlooked) and Appellants had not obtained the necessary leave of court or State Farm's consent, the clerk advised Appellants that the First Amended Complaint was deficient.

The district court eventually granted State Farm's Rule 12(b)(6) motion in each case, finding that the original complaint did not seek unpaid wind damage; that the complaint in effect conceded that State Farm had discharged its obligation to pay for wind damage when it stated "Defendant made only partial payment based upon wind and wind driven rain alone"; and that Appellants had never properly amended the complaint to state an additional claim. Therefore, the district court concluded that appellants' claims were based solely upon flood damage under Louisiana's Valued Policy Statute, LA. REV. STAT. ANN. § 22:695 (2005). The above discussion explains generally what transpired in the district courts in all three suits. We now turn to the procedural

---

[4] Appellants' First Amended Complaint sought to make the following additions (in italics) emphasizing wind damage:

This damage was caused by wind, wind driven rain, storm surge, overflowing of canals and breaches of levees, as alleged below. *However, wind was the efficient proximate cause of all this damage.*

* * *

Flood waters from nearby levee breaches damaged Plaintiffs' real property. These levee breaches were man-made flooding and not natural flooding. Defendant's policy of insurance provided coverage for non-natural flooding from a man-made levee breach.

* * *

*Although Plaintiffs* [sic] *property was damaged as described above, the direct wind damage, by itself, caused a total loss of the property.*

* * *

. . . Instead, Defendant made only partial payment based upon wind and wind driven rain alone. *This partial payment did not constitute full payment of all the damage caused by wind and Defendant still owes Plaintiffs additional policy benefits for all the damage caused by wind."*

differences between *Harrington* and *Benit* on the one hand and *Arceneaux* on the other.

## A. Harrington *and* Benit

In *Harrington* and *Benit*, Appellants attempted to file their First Amended Complaint (along with the "Opposition") on January 8, 2008. The clerk issued a deficiency notice the next day and gave appellants until January 16, 2008 to cure the deficiency by seeking leave of court and refiling their amended complaint. *Id.* On January 15, Appellants tried to cure the deficiency by attempting to file a "Supplemental Opposition to Motion to Dismiss," which, despite its title, consisted almost entirely of a request for leave to amend their original complaint.[5] The following day, on January 16, the district court held a hearing on the Rule 12(b)(6) motions in both cases. It granted the motion as to Appellants' flood damage claims but, upon the request of Appellants' counsel, agreed to defer ruling on the motion with respect to all other claims until the magistrate judge ruled on what Appellants represented was a pending motion for leave to amend their complaint filed the day before.

In fact, however, that motion to amend was never properly filed with the court. That very same day (January 16), the district clerk designated the document deficient because Appellants entitled their motion a "Supplemental Opposition," a pleading which cannot be filed without leave of court under the district court's local rules. *See* LR7.5E. Thus, the district court had deferred ruling upon Appellee's motion to dismiss under the mistaken belief that a motion for leave to amend the complaint was pending before the magistrate judge.

---

[5] The heart of the Supplemental Opposition stated: "[A]s part of their opposition to State Farm's motion Plaintiffs hereby request leave of court to file their First Amended Complaint and that the First Amended Complaint previously filed be deemed filed as of the date of the Court's Order."

When Appellants received that second deficiency notice, they believed that they still had until January 24, the date specified by the clerk, to cure that deficiency and properly amend their complaint in an effort to defeat the Rule 12(b)(6) motion. However, when the district court discovered that no motion to amend was accepted by the clerk or properly before the magistrate judge, it granted State Farm's 12(b)(6) motion as to all claims on January 22, 2008, two days before the clerk's cure date.

The court entered an initial judgment in *Benit* on January 23 but filed an amended judgment in *Benit* and the original judgment in *Harrington* the next day, on January 24.[6] On Saturday, February 23, 2008, Appellants filed a motion for extension of time in which to file a notice of appeal, which the district court granted on Monday, February 25, allowing Appellants 30 additional days in which to file their notice of appeal. Appellants did not file a Rule 59(e) motion to amend or alter the judgment, but instead on March 13, 2008 filed a Rule 60 motion to vacate, which the district court denied on March 25. On March 26, 2008 (30 days after the district court's order granting a 30 day extension to appeal), Appellants filed a notice of appeal in each case. The notices of appeal sought review of the judgments dismissing the suits (the January 24 original judgment in *Harrington* and amended judgment in *Benit*, and the original January 23 judgment in *Benit*) and the March 25 denial of the Rule 60 motions.

## B. Arceneaux

*Arceneaux* proceeded along a slightly different path. In *Arceneaux*, Appellants attempted to file their First Amended Complaint on January 15, 2008. The next day, the clerk's office issued a deficiency notice for failure to obtain leave of court and set the deficiency cure date for January 24, one day

---

[6] The original judgment in *Benit* did not make clear that the judgment dismissed the claims of all of the plaintiffs.

after the scheduled hearing on State Farm's motion to dismiss. On January 22, appellants attempted to file a "Sur-Reply Memorandum in Opposition to Defendant's Motion to Dismiss." This opposition proceeded on the theory that their Amended Complaint had been properly filed and was before the court. In this opposition Appellants did not attempt to cure the Amended Complaint's deficiency by requesting leave to amend. Nor did Appellants obtain leave of court to file the "Sur-Reply" itself, so it was also deemed deficient by the clerk.

On January 24, the day established by the clerk to cure Appellants' deficiency, the district court granted State Farm's Rule 12(b)(6) motion. Appellants later filed a Motion for Leave to File a First Amended Complaint, which the magistrate judge denied on April 3, 2008 because the case had already been dismissed. That same day, the district court entered judgment dismissing the suit. On April 17, Appellants timely filed a Rule 59(e) motion to amend or alter the judgment and a Rule 60(b) motion to vacate the judgment, both of which the district court denied on May 14. On May 21, 2008, Appellants filed a notice of appeal, seeking review of the April 3 judgment and the May 14 order denying their Rule 59(e) and Rule 60(b) motions.

## II. ISSUES ON APPEAL

Appellants in all three cases argue first that they sufficiently pled a claim for State Farm's failure to pay for unpaid wind damage (hereinafter "wind claim") in their original complaint, and the district courts erred in granting the Rule 12(b)(6) motions. Appellants also argue that the district courts erred in refusing to consider their amended complaint clarifying their claim for wind damage and in refusing to vacate the judgments under Rule 60.

## III. JURISDICTION

The district court had diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction over the district court's final judgment pursuant to 28 U.S.C. § 1291. We discuss below the timeliness of the appeals.

## IV. LAW AND ANALYSIS

### A. *Timeliness of Appeals*

Appellants argue that they filed timely appeals from the district courts' judgments and we have *de novo* review of those judgments. Appellees argue that at most we have authority to review the denial of Appellants' post-judgment motions under Rule 59 or Rule 60. We first consider the timeliness of Appellants' appeals.

### *1.* Arceneaux

FED. R. APP. PROC. 4(a)(1) provides the general rule that in a civil case, "the notice of appeal . . . must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." Under Rule 4(a)(4)(A), the timely filing of certain motions, including a FED. R. CIV. P. 59 motion to alter or amend the judgment, makes the time for filing an appeal "run[] for all parties from the entry of the order disposing of the last such remaining motion." In *Arceneaux*, it is undisputed that Appellants' Rule 59(e) motion was timely filed on April 17, 2008 and was decided on May 14, 2008. Thus, Appellants' filing of the notice of appeal in *Arceneaux* on May 21, 2008 was timely and permits us to review both the April 3, 2008 judgment and the denial of the Rule 59 and Rule 60 motions.

## 2. Harrington *and* Benit

Appellants in *Harrington* and *Benit* did not file a Rule 59 motion, only a Rule 60 motion. Unlike a Rule 59 motion, a motion for relief under Rule 60 extends the time for filing an appeal only "if the motion is filed no later than 10 days after the judgment is entered." Rule 4(a)(4)(A)(vi). Because Appellants did not file their Rule 60 motion until nearly two months after entry of the underlying judgment, they could not rely on that motion to extend the time for filing an appeal. Instead, they rely on the district court's order extending the time for appeal.

The district court may extend the time to file a notice of appeal as provided by Rule 4(a)(5). However, Rule 4(a)(5)(C) expressly provides: "No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time [for filing an appeal under Rule 4(a)] or 10 days after the date when the order granting the motion is entered, whichever is later."[7] Appellants timely moved for an extension on Saturday, February 23, 2008, within the prescribed time for filing an appeal under Rule 4(a)(5). The district court granted a 30 day extension on Monday, February 25, extending Appellants' time to appeal until Wednesday, March 26, 2008, the date Appellants filed their notice of appeal. State Farm presented no argument in their brief that the appeal was untimely, and at oral argument State Farm conceded that the notice of appeal in both cases was timely in light of the extension. State Farm is correct.

The judgment in *Harrington* and the amended judgment in *Benit* was entered on January 24, 2008. Under FED. R. APP. PROC. 26(a)(3), because the prescribed 30-day period for filing an appeal would have ended on a Saturday, February 23, 2008, the last day was deemed to fall on Monday, February 25,

---

[7] *See Properties Unlimited, Inc. Realtors v. Cendant Mobility Services*, 384 F.3d 917, 921 (7th Cir. 2004) (noting that "the 'prescribed' time . . . for civil appeals not involving the United States is the original 30-day period").

2008. Under Rule 4(a)(5)(C), the court was therefore authorized to extend the time to appeal 30 days beyond that date, or until Wednesday, March 26, 2008, which it did. The notice of appeal, which was filed on March 26, was therefore timely under Rule 4.

### 3. Conclusion

For the above stated reasons, we conclude that the notices of appeal in *Harrington* and *Benit* are timely under the district court's order granting an extension of time, and Appellants in *Arceneaux* timely filed their notice of appeal after denial of a timely filed Rule 59 motion. We therefore have full appellate review over all underlying judgments and the post-judgment motions.

### B. Dismissal under Rule 12(b)(6)

We now turn to the merits of the appeals. Appellants argue that the district courts erred in concluding that their complaint failed to state a claim for unpaid wind damage under Rule 12(b)(6).

> We review *de novo* the grant of a 12(b)(6) motion to dismiss. "A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). This Court construes the complaint liberally in favor of the plaintiff, and takes all facts pleaded in the complaint as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). This strict standard of review may be summarized as follows: "[t]he question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (1969).

*Gregson v. Zurich American Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003).

The complaint attributed Appellants' property damage to "wind, wind driven rain, storm surge, overflowing of canals and breaches of levees" and

asserted that State Farm was responsible for the damage. The complaint then stated, "Defendant made only partial payment based upon wind and wind driven rain alone." From these statements, the district courts determined that the original complaint stated only a flood claim and did not state a wind claim against State Farm. Because the flood claims were precluded by *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 214 (5th Cir. 2007), the courts dismissed the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

We cannot agree with the district courts' interpretation of the complaint. Construing the complaint "'in the light most favorable to [Appellants] and with every doubt resolved in [their] behalf,'" *Gregson*, 322 F.3d at 885 (quoting 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (1969)), we find that the original complaint states a claim for unpaid wind damage. Though the complaint focuses more heavily on the flood claim, it also plainly seeks recovery for damage caused by wind and wind-driven rain. After two paragraphs discussing damage caused by flooding, wind, and wind-driven rain, the complaint states that State Farm failed to pay the policy limits as required "[a]s a result of the aforesaid events." The quoted phrase is not limited to the flood damage.

Under the Rule 12(b)(6) standard, the complaint did not concede that State Farm paid the wind claim in full when it stated, "Defendant made only partial payment based upon wind and wind driven rain alone." The meaning we draw from that statement is that State Farm's prior payment did not include any payment for flood damage. That statement does not establish, however, that the partial payment constituted payment in full for the wind claim. This is consistent with another district judge's reading of this identical language:

> As noted by the Court, a close reading of the albeit inartfully drafted original complaint sets forth in clear terms that the plaintiffs

11

experienced both flood and wind damage. The problem with the original complaint is the sentence in Paragraph 6 which states "Defendant made only partial payment based upon wind and wind driven rain alone." Having heard the argument of counsel for both plaintiffs and State Farm, the Court found that the true thrust of these claims is underpayment for the wind damage—thus the "partial" payment noted was not intended to mean that the payment was satisfactory for all alleged wind damage, just that there had been some payment made for wind damage.

*In re Katrina Canal Breaches Consolidated Litigation*, 2008 WL 3819835, *1 (E.D. La. 8/11/2008).

In sum, we disagree with the district courts' interpretation of the complaints as asserting a claim for flood damage only. We read the complaint as also asserting a claim for unpaid wind damage. We therefore cannot say that Appellants have failed to state a claim upon which relief can be granted. This disposition of the case makes it unnecessary for us to address the post-judgment motions.

## **CONCLUSION**

For the above reasons, the district courts' judgments dismissing Appellants' suits in all three cases are reversed, and the cases are remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.