# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 23, 2011

No. 11-30129

Lyle W. Cayce
Clerk

ADA D. TURNER; RONNIE TURNER,

Plaintiffs-Appellants

v.

NEAL E. PLEASANT; RPIA OF DELAWARE, INCORPORATED;
STANDARD FIRE INSURANCE COMPANY,

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Ada and Ronnie Turner seek to reopen a judgment entered in 2001. Their personal injury claims were heard in the United States District Court for the Eastern District of Louisiana. After a bench trial, Judge G. Thomas Porteous, Jr. entered judgment for the defendants. The Turners moved for a new trial, or, alternatively, for Judge Porteous to recuse himself because of their claim that the judge had an overly close relationship with the defendants' attorney. Judge Porteous denied these motions. This court affirmed.

In June 2010, after Judge Porteous's impeachment and removal from office, the Turners filed what they termed an independent action in equity in the

No. 11-30129

same district court on the grounds that the judgment was procured by fraud involving the district judge. A new district judge dismissed the suit as barred by the doctrine of res judicata. We REVERSE and REMAND.

## FACTS

On June 3, 2001, Ada and Ronnie Turner were on a small fishing boat on the Intracoastal Waterway in Houma, Louisiana.[1] They were passed by a yacht controlled by Neal Pleasant. The Turners allege that the high speed and size of the yacht created large swells in the waterway. The swells grew so large that the Turners' boat was thrown into the air. The Turners claim that Ada Turner injured her back when she landed.

The Turners brought a personal injury lawsuit against the yacht's operator, owner, and insurance company: Neal Pleasant, RPIA of Delaware, and the Standard Fire Insurance Company, respectively. The case, filed in the Eastern District of Louisiana, was assigned to Judge G. Thomas Porteous, Jr. Originally, the defendants were represented by Mark S. Taylor, a lawyer in Metairie, Louisiana. One week before the preliminary conference, the defendants retained Richard A. Chopin as well. While Taylor still worked on the case, Chopin was designated as the trial attorney of record.

Chopin and Judge Porteous were friends. They would dine and travel together. Their relationship was such that Chopin served as an intermediary when a company unrelated to this litigation provided Judge Porteous with all-expenses-paid hunting trips. Chopin accompanied Judge Porteous on these trips, sharing a room at least twice. One of these trips occurred during the pendency of the original lawsuit, after the complaint was filed but three months before Chopin was retained by the defendants.

---

[1] These facts are drawn from the Turners' complaint and, given the posture of the case, are accepted as true. *Hale v. King*, 642 F.3d 492, 498-99 (5th Cir. 2011).

No. 11-30129

A central evidentiary battle at trial was between expert witnesses. The defendants' experts disputed the assertion that the yacht caused the wake and, even if it did, that Ada was injured. The defendants presented evidence that at the time of the accident, Ada suffered from a pre-existing injury to her lower back. Dr. Christopher Cenac, Sr. testified for the defendants. Chopin frequently retained Cenac to be the medical expert in personal injury cases. Like Chopin, Cenac and Judge Porteous spent time together outside of court including traveling on luxury hunts; they certainly appeared to be friends. Ultimately, Judge Porteous ruled in favor of the defendants, relying heavily on his determination that Cenac was more credible than the Turners' expert.

The Turners moved for a new trial and for the judge to recuse himself. Most of the motion concerned reasons for a new trial. Only the final paragraph presented arguments for recusal. No facts were introduced, but the motion asserted "the findings of fact and the conclusions of law reflect [partiality] and bias in favor of the defendant and/or defense counsel in this case." The defendants' response described the recusal motion as "an act of desperation never previously witnessed" that "vituperatively attacked the Court and its integrity." The merits of the Turners' arguments were not addressed because the defendants refused to "dignify the plaintiffs' allegations by according them any additional print."

Judge Porteous denied both motions, explaining that any suggestion of partiality was "utterly unsubstantiated," "unfounded and without merit," and "not supported by any evidence." He admitted to being Chopin's friend and asserted, inaccurately according to the current pleadings, that he was friends with the Turners' counsel as well. The plaintiffs appealed.

On appeal, the judge's insistence of his impartiality and the absence of any factual support for the allegations led this court to deny the "unsupported"

3

No. 11-30129

claims and affirm the district court's orders. *Turner v. Pleasant*, 127 F. App'x 140, 141 (5th Cir. 2005). For two years, the case appeared resolved.

In May 2007, the Department of Justice sent a Complaint of Misconduct against Judge Porteous to the Chief Judge of this court regarding misconduct unrelated to this case. After investigating the complaint, the Judicial Council of the Fifth Circuit determined that Judge Porteous's misconduct might be grounds for impeachment. Accordingly, it certified its determination to the Judicial Conference of the United States. The Judicial Conference unanimously decided to transmit the report to the House of Representatives, pursuant to 28 U.S.C. § 355(b)(1).

On September 17, 2008, the House of Representatives authorized the House Judiciary Committee to conduct an investigation to determine whether impeachment was warranted. This authorization was renewed at the beginning of the 111th Congress. In January 2009, the House Judiciary Committee delegated the investigation to a special sub-committee. The sub-committee concluded its report in early 2010, and recommended to the full committee that Judge Porteous be impeached. The members of the full committee agreed, introducing Articles of Impeachment on January 21, 2010. H.R. Res. 1031, 111th Cong. (2010).

On March 4, days before the House was to vote on the matter, the House Judiciary Committee printed a Report detailing its investigation into Judge Porteous's misconduct. On March 11, 2010, the House unanimously voted to impeach on four articles of impeachment. 156 Cong. Rec. H1334-1337 (daily ed. Mar. 11, 2010). On December 8, 2010, the Senate removed Judge Porteous from office. 156 Cong. Rec. S8608-11 (daily ed. Dec. 8, 2010).

This personal injury action was one of the cases discussed in the report of the House Judiciary Committee. Placing *Turner v. Pleasant* in context of Judge Porteous's other alleged misconduct, the House Report stated that, at the time

4

No. 11-30129

the Turners filed their motion for recusal, Judge Porteous was presiding over another trial in which Chopin was an attorney. At that trial, Chopin was representing a company that secretly provided the judge with all-expenses-paid hunting trips. Chopin served as the intermediary for these gifts. The Turners, after reviewing the House Report, filed a new complaint seeking to set aside the prior judgment.

The new cause of action repeated the argument concerning Judge Porteous's relationship with Chopin. But it also made new allegations. The complaint alleged that the defendants and Chopin improperly used Cenac as a witness in an attempt to gain favorable treatment. It also gathered facts and details from the House Report. The complaint claimed Chopin frequently bought meals for Judge Porteous, that the judge and the defendants' expert witness were friends who hunted together, that Chopin and the judge shared a hotel room while the underlying case was on appeal to this court, and that Judge Porteous made deceptive statements in his order denying recusal in an attempt to hide his relationship with Chopin and cloud the record on appeal.

The defendants filed a motion to dismiss on the basis that the complaint was barred by res judicata. The district court granted the motion. The court held that the complaint, as a collateral attack on a prior judgment, was barred by res judicata. It also discussed in a footnote the claim of fraud, finding it unsupported by any facts. The Turners timely appealed.

DISCUSSION

We review *de novo* a district court's dismissal for failure to state a claim. *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). We construe facts in the light most favorable to the nonmoving party, as a motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (quotation marks and citation omitted). Dismissal is appropriate only if the

5

complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2]  To satisfy this standard, the complaint must provide more than conclusions, but it "need not contain detailed factual allegations." *Colony Ins. Co.*, 647 F.3d at 252.  Yet, it must allege enough facts to move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Determining whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

The Turners filed an independent action in equity.[3]  A significant hurdle for them, one the district court found had not been cleared, was that a few years earlier they had made the same general assertions in the district court and on the appeal from the final judgment.  Res judicata generally bars re-litigation of claims that actually were or should have been made earlier. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).  The doctrine ensures the finality of judgments, shelters litigants from successive litigation, and conserves judicial resources. *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004).

Res judicata must at times yield to a well-pled independent action in equity. *See United States v. Beggerly*, 524 U.S. 38, 45-46 (1998).  In order to prevent an independent action in equity from making null the limitations of the related Rule 60(b)(3) right to relief for one year after judgment due to fraud, the injustice to be remedied must be so severe as to overcome the purposes for the

---

[2] The complaint includes Plaintiffs' Exhibit A, which is a collection of excerpts from the House Report. *See* Fed. R. Civ. P. 10(c).

[3] Such an action is distinct from a motion to set aside a judgment for fraud on the court. *Compare* Fed. R. Civ. P. 60(d)(1) *with* Fed. R. Civ. P. 60(d)(3).  Even so, the fraud alleged in an independent action may be of the kind that could accurately be described as fraud on the court. *See Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 48-49 (1st Cir. 1995).

doctrine of res judicata. *Id.* at 47. The actions are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quotation marks and citation omitted). The Federal Rules preserved a court's power to hear an independent action to grant relief from a judgment. *See* Fed. R. Civ. P. 60(d)(1).

The defendants argue one of our precedents controls and should cause us to affirm. *See Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663 (5th Cir. 1981). In that case, a litigant sought to reopen a judgment by claiming the judge was biased and that a witness committed perjury. *Id.* at 668. On appeal, we discussed that the plaintiff presented both an independent action for relief from judgment, which would be under Rule 60(d)(1), and a claim of fraud on the court – a Rule 60(d)(3) claim. *Id.* at 667 n.6. We held the independent action failed because "the plaintiff has alleged no facts indicating that the issues raised were not open to litigation in the former action or that he was denied a fair opportunity to make his claim or defense" in the original lawsuit. *Id.* at 668. The case did not limit this court's historic power to set aside past judgments when necessary to preserve the integrity of the courts, but it did require a proper pleading to invoke that power.

In our analysis, we identified five elements of an independent action in equity: (1) a prior judgment which "in equity and good conscience" should not be enforced; (2) a meritorious claim in the underlying case; (3) fraud, accident, or mistake which prevented the party from obtaining the benefit of their claim; (4) the absence of fault or negligence on the part of the party; and (5) the absence of an adequate remedy at law. *Addington*, 650 F.2d at 667-68.

The Turners allege that the defendants or their agents improperly exploited the relationships between Judge Porteous and Chopin as well as between the judge and Cenac. The House Report, excerpted in the complaint, details the claim that Chopin served as a middleman for improper gifts and

payments to Judge Porteous from a company that appeared before him in another case. H.R. Rep. No. 111-427, at 127 (2010). Allegedly, the Turners' recusal motion threatened to disclose this fact. Moreover, the Report claims that Judge Porteous ruled in a manner which prevented a fair assessment of the recusal motion on appeal. This tactic allegedly was also employed by Chopin, who refused to refute the merits of the motion, instead simply labeling the allegations "unsubstantiated."

The Turners also alleged that Judge Porteous inhibited any investigation of his relationships. "He disclosed no pertinent material facts about his relationship with Chopin, failed to address the discrete allegations known and raised by the moving counsel and made deceptive statements that distorted the factual record as to his relationship with the attorney at issue." *Id.* at 135. As alleged in the Report, his conduct "assured affirmance on appeal of his denial of the recusal motion, and a victory below for Chopin." *Id.* Allegedly, Chopin and Porteous engaged in a "sustained effort to keep Judge Porteous's hunting trips a secret from litigants who would have reason to believe their interests before the court might be affected." *Id.* at 136 n.643. This is far more than an allegation of friendship by the judge for an attorney and a witness.

These allegations make it plausible that Chopin, Cenac, and Porteous acted in their pecuniary self-interest at the expense of the court's integrity. Such self-dealing could have caused Judge Porteous to enter judgment against the Turners. If this proves to be true, the judgment should not be enforced because equity will not enforce judgments procured by fraud or bribery. *See* Restatement (Second) of Judgments § 70 (1982).

Next, the Turners allege that their personal injury claim is meritorious. They claim the outcome of the trial hinged on credibility determinations made by the trier of fact. If Judge Porteous had found Cenac to be less credible, it is

plausible that the Turners would have prevailed. Because it is plausible that the Turners may present a winning claim, we cannot say it is without merit.

We also require a plausible allegation of fraud. Simple fraud is insufficient. If that is the case, a motion under Rule 60(b)(3) is the proper vehicle to reopen judgment. *See Beggerly*, 524 U.S. at 46. Rather, the fraud alleged must be of a greater order of magnitude. Describing the degree of severity that separates the two types of fraud will always escape precision. *Cf. In re Levander*, 180 F.3d 1114, 1119-20 (9th Cir. 1999); *Wilkin v. Sunbeam Corp.*, 466 F.2d 714, 717 (10th Cir. 1972); 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2870 (2d ed. 1987).

The Turners' complaint alleges facts that make it plausible that Chopin and Cenac conspired with the district judge, and that Chopin and the judge – both officers of the court – acted in a manner calculated to prevent this court from undertaking meaningful appellate review. This court, like the public at large, relies on the integrity and honesty of the district judges. We presume judges to be honest. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975). When confronted with such unusual facts, it is at least plausible that the district court did not perform its task in the manner expected.

This case's historic context amplifies this concern. Judge Porteous is only the eighth judge ever impeached and removed from office by the United States Congress. When viewing the complaint in its proper context, assuming all the facts alleged are true, and construing it in the light most favorable to the Turners, we conclude that it is plausible that there was fraud of a sufficient magnitude that the procedural requirements of Rule 60(b)(3) do not control.

Our inquiry does not end there. The Turners must also allege that they were not at fault for failing to uncover the fraud. The Turners argue that they used every tool at their disposal during the original trial. The defendants contend that this is not true, as the Turners could have sought to depose Judge

No. 11-30129

Porteous or Chopin in order to develop a more detailed factual record. Yet the Turners' counsel did diligently bring a motion for recusal upon learning of Judge Porteous's trip with Chopin. The House Report asserts that Chopin and Porteous attacked the complaint in tandem to "seal off further inquiry into" the relationship. H.R. Rep. No. 111-427, at 135.

We disagree that the alleged scheme was discoverable by the Turners simply because it was eventually uncovered by the House of Representatives. The House of Representatives is part of a co-equal branch of government. It has the power to compel testimony. *See Watkins v. United States*, 354 U.S. 178, 200-201 (1957). It has the power to hold those who refuse to testify in contempt. *Id.* at 207 n.45. By comparison, the Turners would have been forced to seek Judge Porteous's permission to conduct depositions. Regardless of any suggestions of additional efforts they might have undertaken, the Turners' ability to uncover immediately after trial what the House Report later claimed was occurring was virtually nonexistent.

Assuming the allegations contained in the complaint are true, there is a reasonable inference that Porteous and Chopin conspired to prevent the Turners from ever learning the truth about Porteous's bias. With the presiding judge and opposing counsel both actively attempting to hide facts from the Turners, the Turners have put forward sufficient facts to plausibly allege that they were not at fault for failing to uncover the fraud.

We are left with the last element. The Turners must allege they have no adequate remedy at law. They do not. The opportunity to file a Rule 60(b) motion passed long ago. *See* Fed. R. Civ. P. 60(c).

We REVERSE the district court's dismissal and REMAND.

10