**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3218
_____

In re: SAMSON RESOURCES CORPORATIONS, et al.,
Debtors

Calvin Williams,
                                        Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D. Del. Civ. No. 1:16-cv-01124)
District Judge:  Honorable Richard G. Andrews
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 10, 2018

Before:  SHWARTZ, KRAUSE and FISHER, Circuit Judges

(Opinion filed: April 12, 2018)
_____

OPINION[*]
_____

PER CURIAM

        This is an appeal by Calvin Williams, who in the underlying bankruptcy case

objected to the sale of certain mineral rights by the debtor, Samson Resources

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Corporation ("Samson").[1] Williams had inherited a royalty interest in minerals extracted from the "Seamster Heirs" well in Webster Parish, Louisiana. And Samson—an Oklahoma-based company involved in exploration and production of hydrocarbons—sought to sell its working interest in the lease governing the Seamster Heirs well ("the Seamster Lease") as part of its reorganization strategy in the Bankruptcy Court.

In litigating Williams's objection, the parties stuffed the record with evidence of the transactions leading to their respective interests in the well. Apparently, it all started with Will Seamster—Williams's great-grandfather—who was born in Louisiana in the late nineteenth century. A farmer with no formal education, Seamster came to own around 40 acres of land in Webster Parish. In 1949, he purportedly conveyed mineral rights to Leroy Connell in exchange for $1,000 and a 1/8 royalty interest in any mineral production on or pooled under his land. When Seamster died, his royalty interest was divided amongst his children per stirpes. Succession of those interests was detailed in a Seamster 'family tree' prepared by Samson, which calculated Williams's current, fourth-generational royalty interest to be 1/240 of Seamster's original 1/8 interest. Pursuant to that interest, Williams received and cashed royalty checks from Samson, which acquired a working interest in the Seamster Lease through a merger in 2003—the latest in a decades-long series of such transfers between various oil and gas companies.[2]

---

[1] Technically, there are several related corporate debtors, each of which filed a petition for relief under Chapter 11 of the Bankruptcy Code. The Bankruptcy Court consolidated the cases. For ease of reference, we refer to the entities collectively as "Samson."

At the conclusion of a hearing on June 7, 2016, the Bankruptcy Court overruled Williams's objections and authorized the sale to go forward. On June 29, 2016, Williams moved for reconsideration, citing new evidence. On July 11, 2016, Williams filed an identical-in-substance motion, titled "Motion to Present New Evidence." The Bankruptcy Court denied reconsideration on September 7, 2016.[3] Williams filed a post-judgment motion for relief, under Fed. R. Civ. P. 59(e) and Fed. R. Bank. P. 9023, which, after revision by Williams, was denied on November 16, 2016. Williams then sought review from the District Court, filing a notice of appeal on December 5, 2016.

---

[2] After briefing in this appeal was complete, the Bankruptcy Court disallowed each proof of claim filed by Williams and his relatives. The Bankruptcy Court concluded, inter alia, that Samson "properly and fully paid" Williams and his relatives all royalties that they were due. Williams appealed, and that matter is currently pending in the District Court. See DC Civ. No. 1:18-cv-00084 (D. Del.).

[3] The Bankruptcy Court's September 7, 2016 order denying reconsideration made reference only to Williams's July 11, 2016 motion. In this appeal, the parties were directed to file supplemental briefs "identifying where in the record the Bankruptcy Court disposed of the request for reconsideration filed June 29, 2016 . . .." In Williams's supplemental brief, he explains that the two motions at issue were really one and the same; the June 29, 2016 motion was "resubmitted" in the form of the July 11, 2016 motion because he perceived that the Bankruptcy Court "never addressed" it in its original form. Samson argues that the July 11, 2016 motion simply amended—thus rendering moot and in no need of separate adjudication—the June 29, 2016 motion. Alternatively, Samson argues that, because the motions were identical in substance, the Bankruptcy Court's order denying the second-filed motion necessarily constituted a denial of the first-filed one. We agree with Samson's alternative argument. See United States v. Claxton, 766 F.3d 280, 291 (3d Cir. 2014); see also Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. Unit A July 1981) ("The denial of a motion by the district court, although not formally expressed, may be implied by the entry of . . . an order inconsistent with the granting of the relief sought by the motion."). In doing so, we note that Williams's unauthorized reply to Samson's supplemental brief was—as with Williams's other filings—liberally construed and carefully considered.

The District Court dismissed the appeal for lack of subject matter jurisdiction. It concluded that Williams's appeal was untimely. The District Court determined that, at most, Williams's post-judgment motions tolled the appeal deadline until November 30, 2016: 14 days after the Bankruptcy Court denied Williams's Rule 59(e) motion, and 5 days before he filed his notice of appeal. Cf. Fed. R. Bankr. P. 8002(b)(1)(B).[4] The District Court also determined that it was powerless to excuse Williams's belated appeal. The District Court relied on our precedential holding in Caterbone, that the 14-day appeal window in bankruptcy cases, see Fed. R. Bankr. P. 8002(a)(1), has a statutory basis, see 28 U.S.C. § 158(c)(2), and thus, under Bowles v. Russell, 551 U.S. 205, 209 (2007), is mandatory and jurisdictional. See In re Caterbone, 640 F.3d 108, 110-12 (3d Cir. 2011). Williams timely appealed the District Court's decision to this Court.[5] He also moved in the District Court for reconsideration, which motion was denied by order entered October 26, 2017.[6]

Having reviewed all of the arguments set forth in Williams's briefs and supplemental filings, and perceiving no error below, we will affirm the judgment of the

---

[4] The District Court questioned whether the Rule 59(e) motion was timely filed and thus capable of tolling at all, but declined to resolve the issue in light of its conclusion that Williams's appeal was untimely even with the benefit of tolling under Bankruptcy Rule 8002(b)(1)(B).

[5] We have jurisdiction under 28 U.S.C. §§ 158(d)(1) & 1291. We review de novo whether the District Court properly dismissed Williams's bankruptcy appeal for lack of subject matter jurisdiction. See Caterbone, 640 F.3d at 111.

[6] Williams did not appeal the District Court's October 26, 2017 order.

District Court for substantially the reasons set forth in its August 30, 2017 memorandum opinion.[7] In short, because Williams did not timely appeal to the District Court, he lost the opportunity for appellate review of the merits of his objection to the Bankruptcy Court's order authorizing the sale of Samson's interest in the lease governing the Seamster Heirs well. Williams did not move in the Bankruptcy Court to extend the time to appeal, under Fed. R. Bank. P. 8002(d)(1), nor did he file anything after the Bankruptcy Court denied relief under Rule 59(e) that could be liberally construed as a timely motion under Bankruptcy Rule 8002(d)(1). And while we, like the District Court, acknowledge the many difficulties inherent in proceeding pro se in a court hundreds of miles away from one's home, some of which Williams discusses in his opening brief, there are no equitable exceptions to jurisdictional requirements such as the one governing the time to appeal final orders of bankruptcy courts. See In re Sobczak-Slomczewski, 826 F.3d 429, 432 (7th Cir. 2016) (per curiam); see also Bowles, 551 U.S. at 214. Therefore, we will affirm. Williams's pending motions are denied.

---

[7] Samson's motion for leave to file a supplemental appendix is granted.