**Albert GINSBERG, Plaintiff,**

v.

**Peter POMPONIO, et al., Defendants.**

**Civ. A. No. 82–0416–A.**

United States District Court,
E. D. Virginia,
Alexandria Division.

Aug. 11, 1982.

Charles A. Trainum, Jr., Arlington, Va., for plaintiff.

William Donnelly, Arlington, Va., for defendants.

MEMORANDUM

RICHARD L. WILLIAMS, District Judge.

This matter comes before the court on the motion of Ginsberg, the counterclaim defendant, for dismissal of the counterclaim of Peter Pomponio, Paul Pomponio, Louis J. Pomponio, Jr., and the Estate of Louis J. Pomponio, Sr. ("counterclaimants"[1]) under Fed.R.Civ.P. 12(b)(6), or for summary judgment under Fed.R.Civ.P. 56(b). For reasons stated below, the court grants the counterclaim defendant's motion for summary judgment under Fed.R.Civ.P. 56(b).[2]

---

1. In this memorandum, "the Pomponios" refers to Peter Pomponio, Paul Pomponio, and Louis Pomponio, Jr., but not to Louis Pomponio, Sr., or to the Estate of Louis Pomponio, Sr.

2. The counterclaim defendant brought this motion in the alternative, but it really is a hybrid between a Rule 12(b)(6) and a Rule 56(b) motion: it requires the court to undertake an analysis of the sufficiency of counterclaimants' alle-

## BACKGROUND

Ginsberg lent two million dollars to Rosslyn Development Company, Inc.,[3] in May, 1972. The loan was evidenced by Rosslyn Development's note, secured by a deed of trust on its principal asset, the Pomponio Plaza Office Building ("Plaza") in Rosslyn, Virginia. The Pomponios also gave a written guaranty of payment of the note.

By agreement of September 21, 1972, Ginsberg became the mortgagee-in-possession of the Plaza. The agreement, signed by the Pomponios, recites that the note secured by the deed of trust is in default.

On September 29, 1976, Ginsberg brought suit in this court against the Pomponios, seeking a money judgment on the personal guaranty. (*Ginsberg v. Pomponio*, Civil Action No. 76–736–A.) This court granted summary judgment to Ginsberg on the issue of liability, and entered a money judgment in his favor after a damages trial, on March 15, 1977.

On April 7, 1977, the Pomponios noted an appeal of that decision. The United States Court of Appeals for the Fourth Circuit affirmed the district court's judgment. *See Ginsberg v. Pomponio*, 573 F.2d 1305 (4th Cir., 1978).

However, before noting an appeal, the Pomponios moved under Fed.R.Civ.P. 60(b) to vacate the judgment. The basis for this motion was "newly discovered evidence," viz. a letter agreement of June 30, 1972. The Pomponios say that the agreement was that should Ginsberg receive two million dollars from various stipulated sources, he would release the security held against the Plaza; that Ginsberg received such money; and that he failed to disclose receipt of the money to the Pomponios. According to the Pomponios, they did not learn of the letter agreement they had signed until the deposition of their former attorney, taken under the aegis of an action in United States District Court for the District of Columbia in June, 1977. Their own files were unavailable to them at the time, because the files were in the custody of a grand jury convened in the Eastern District of Virginia. On December 13, 1979, this court denied the 60(b) motion.

On January 10, 1980, the Pomponios noted an appeal of the denial of the 60(b) motion. In affirming the denial of the Rule 60(b) motion, the appeals court stated:

"To conclude, the district judge was not erroneous at all, and certainly not clearly erroneous, in his ruling denying the motion on the basis that:

1. The 'newly discovered' evidence 'would have been available to defendants at trial had defendants exercised due diligence in discovery or in a review of their own files';

gations, but that analysis in turn requires that the court take into account records of prior proceedings.

Fed.R.Civ.P. 12(b) states: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." All prior proceedings to which the court refers in the course of analysis of this motion are named in the amended counterclaim. However, because the court takes judicial notice of facts regarding those proceedings which go beyond the averments of the counterclaim, and because the counterclaim defendant gave notice to the counterclaimants that it sought relief under Fed.R.Civ.P. 56(b) in the alternative, the court disposes of the motion under Rule 56(b).

(The court does not thereby imply that every Rule 12(b)(6) motion requiring judicial notice of prior proceedings for disposition must be treated as a motion under Rule 56. *Compare Iacaponi v. New Amsterdam Cas. Co.*, 379 F.2d 311 (3d Cir.), *cert. denied*, 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 849 (1968), *with Kaufman v. Somers Board of Education*, 368 F.Supp. 28 (D.Conn.1973).)

The counterclaim defendant filed portions of depositions with his motion. In response to these, counterclaimants have filed an affidavit. The court does not base its disposition of this motion on the depositions or the affidavit.

3. From at least May, 1972, up to at least March 15, 1977, the Pomponios occupied the following positions in Rosslyn Development: Louis J. Pomponio, Jr., president and director; Peter Pomponio, vice president and director; Paul Pomponio, secretary-treasurer and director.

2. The plaintiff (appellee here) owed no duty of voluntary disclosure to the defendants; and

3. 'The letter of 30 June 1972, would not have changed the outcome of the trial in the least.'" *Ginsberg v. Pomponio*, 628 F.2d 1348 (4th Cir. 1980).

Meanwhile, Ginsberg arranged for a foreclosure sale of the Plaza, to occur on September 14, 1976. However, on that day, Rosslyn Development filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. (*In re Rosslyn Development Co., Inc.*, Bankruptcy No. 77–552–A.) The filing automatically stayed the foreclosure. After hearings, the bankruptcy court permitted Ginsberg to foreclose. At the foreclosure sale, held on September 14, 1977, he purchased the Plaza for two million, five hundred thousand dollars.

On the same day, Peter and Paul Pomponio, "for the use and benefit of Rosslyn Development Co., Inc.," sued in state circuit court to set aside the foreclosure sale, on the grounds that the letter agreement of June 30, 1972 made the foreclosure improper. (*Pomponio v. Alexander Title Agency, Inc.*, Chancery No. 27676–A. *See* Second Amended Bill of Complaint in that case.) The state court found that Peter and Paul Pomponio lacked standing, but permitted the trustee in bankruptcy for Rosslyn Development to intervene. The trustee settled with Ginsberg, and the state court entered an order of voluntary dismissal with prejudice, on January 23, 1980.

Subsequently, in another suit in this court, *Ginsberg v. Pomponio*, Civil Action No. 79–637–A, the Pomponios filed an amended counterclaim asserting that Ginsberg improperly foreclosed on the Plaza. In March of this year, this court, per Judge Bryan, ruled that the bankruptcy court and the state circuit court already had adjudicated the issue, and *res judicata* barred its recycling:

"[T]he court has sustained the plaintiff's plea of *res judicata* to the extent that the plea is addressed to those matters which were or could have been raised in the suits filed first in Arlington Circuit Court and subsequently in the Bankruptcy Court concerning the Rosslyn Development Corporation.... [It] is not the intent of the court, however, in so ruling, to preclude the defendants to apply to *those* courts to reopen or vacate those judgments which I have found to constitute *res judicata*." Trial Transcript, March 3, 1982, at 28 [Emphasis added].[4]

The Pomponios noted an appeal of this ruling of the court on May 28, 1982.

## THE PRESENT COUNTERCLAIM

In this case the counterclaimants ask that the Plaza foreclosure be set aside, and that the state circuit court dismissal order and the judgment in 76–736–A be declared void. They allege that because Ginsberg "fail[ed] to disclose the true status of obligations allegedly owed on the Note secured by the ... Deed of Trust and the personal guarantee of the Pomponios," he "therefore fraudulently alleged and offered perjured proof of [the Pomponios'] default," thereby practicing "extrinsic fraud" and "fraud upon the Courts" in the three actions, resulting in the Pomponios' failure "to fairly present ... claims and defenses in Civil Action No. 76–736–A and Chancery No. 27676–A."

## DISPOSITION

This court will not contravene its own ruling of *res judicata* in Civil Action No. 79–637–A. Hence it dismisses the counterclaim insofar as it requests that the Plaza foreclosure be set aside and that the state circuit court dismissal order be declared void. What remains for consideration, then, are the counterclaimants' allegations insofar as they relate to the demand that the court declare the judgment in Civil Action 76–737–A void.

---

4. Judge Bryan memorialized his holding in his Memorandum Opinion of March 29, 1982:

"At the outset of the trial, the court sustained in part the plaintiff's [Ginsberg's] plea of *res judicata*, ruling that inquiry into the propriety

of a prior foreclosure by the plaintiff on the Plaza building ... was precluded by earlier adjudications of that issue by the Circuit Court of Arlington County, Virginia, and the Bankruptcy Court."

Ginsberg maintains that this is a Rule 60(b) "independent action" which counterclaimants cannot bring under the contemporary interpretation of that rule, particularly as explicated in the recent decision in *Great Coastal Exp. v. International Broth., etc.*, 675 F.2d 1349 (4th Cir. 1982). Under Fed.R.Civ.P. 60(b), on motion a court may relieve a party from a judgment obtained by fraud, if the motion is brought within one year. The rule further provides that the one-year cut-off "does not limit the power of a court to entertain an independent action ... to set aside a judgment for fraud upon the court." *See* Fed.R.Civ.P. 60(b).

In *Great Coastal*, a union appealed the denial of a 60(b) motion by the district court and filed an original petition with the circuit court of appeals to set aside its affirmance of the underlying district court judgment against it, on the grounds that plaintiff's witnesses had perjured themselves in the original trial.

The appeals court first dealt with the motion. It found that the one-year cutoff for 60(b)(3) motions was applicable, because perjury is not a "fraud on the court" under Rule 60. "Perjury and fabricated evidence are evils that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible." *Id.* at 1357. Thus, even though the district court found that there had been perjury, that court properly denied the motion on grounds of untimeliness. *See id.* at 1355.

The appeals court then addressed the "independent action" question. Adopting the five-part test of *Addington v. Farmers Elevator Mutual Ins. Co.*, 650 F.2d 663, 667–8 (5th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981), the court held that "that perjury and false testimony are not grounds for relief in an independent action in the Fourth Circuit...." *Id.* at 1358. It therefore dismissed the union's original petition with the appeals court.

The counterclaimants maintain that *Great Coastal* is inapplicable, because it dealt only with an independent action to set aside a judgment in an action arising under federal law and not under state law. Coun-

terclaimants argue that in this case Virginia law should apply.

However, in order to decide this motion, it is unnecessary for the court to pursue the twists and turns of the doctrine spawned by *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The test adopted by the Fourth Circuit shares with Virginia law the view that as far as a judgment allegedly obtained by perjury is concerned, "[e]quity relieves only the diligent." *McClung v. Folks*, 126 Va. 259, 101 S.E. 345, 349 (1919). *Compare McClung with Addington, supra*, at 668. If by the exercise of due diligence counterclaimants could have discovered the alleged fraud at the time of the proceedings in 76–736–A, they cannot now seek to set aside the judgment in that case on the grounds of that fraud.

Unfortunately, it is difficult to extract the alleged circumstances constituting fraud from the counterclaim, despite the command of Fed.R.Civ.P. 9(b), which requires that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." The rule makes it clear that federal courts are not to countenance "fishing expeditions" on bare allegations of fraud.

Clearly counterclaimants cannot base their present action on an allegation that Ginsberg defrauded the Pomponios by withholding the letter agreement of June 30, 1972. The district court, affirmed by the appeals court, held that the Pomponios had not exercised due diligence with respect to the discovery of the letter agreement.

However, these are not the only circumstances which counterclaimants allege constitute fraud. They also assert that Ginsberg misrepresented the amount of the indebtedness secured by the Plaza. Unfortunately, the Pomponios did not exercise due diligence in 76–736–A. During the course of that action, filed almost six years ago, they could have discovered the evidence which they now seek, and by which they hope to prove perjury and fabrication in the earlier proceeding. In that suit the Pomponios, although represented by counsel, conducted no discovery whatsoever. They

did not file requests for production of documents, propound interrogatories, or depose Ginsberg.[5,6]

When the United States Court of Appeals for the Fourth Circuit affirmed the denial of the Rule 60(b) motion two years ago, it stated: "[W]hen a case is fully tried and an appeal exhausted, there should be an end to the matter so that others may, in turn, have their days in court. *Interest reipublicae ut sit finis litium.*" *Ginsberg v. Pomponio,* 628 F.2d 1348 (4th Cir. 1980). Two years after this statement was made, the counterclaim defendant prays once again for a *finis litium.* For the reasons stated above, the court grants the relief sought, as the accompanying order reflects.

---

**5.** The file in Civil Action No. 76–736–A reveals that the Pomponios made no formal discovery requests. The court notes, parenthetically, that the failure to discover was touched upon at the damages trial:

THE COURT: In this proceeding, have you ever been served with any pleading or paper or summons or subpoena or any other piece of paper or in writing or otherwise requesting, demanding, ordering or in any way directing that you produce information for the Defendants [the Pomponios] that you, either through advice of your Counsel or otherwise, failed to abide by?

THE WITNESS [Ginsberg]: Not in this proceeding, Your Honor.

THE COURT: All right, sir. Recross?

MR. CRANWELL [counsel for the Pomponios]: No further questions, Your Honor.

Transcript of Proceedings of March 15, 1977, filed August 6, 1980, at 44.

**6.** Judge Butzner dissented in *Great Coastal.* He would have held that there had been a fraud upon the court, and would have set aside the prior judgment, because the facts satisfied the criteria of *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). One criterion set forth in *Hazel-Atlas* is that the prior judgment must involve an issue "of great moment to the public...." *Id.* at 246, 64 S.Ct. at 1001. "A dispute that concerns only private litigants is not enough." *Great Coastal* at 1364 (Butzner, J., dissenting). This case is quintessentially a protracted private dispute. Thus, even applying the criteria of *Hazel-Atlas,* the disputants cannot continue with this counterclaim.