[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11708

_____

D.C. Docket No. 1:14-cv-02923-ELR

GERARD MARCHELLETTA, JR.,

Plaintiff-Appellant,

versus

PATRICIA BERGSTROM,
C. ANDREW MARTIN,
PAUL MONNIN,
JUSTIN ANAND,
RANDY CHARTAS, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 25, 2018)

Before ED CARNES, Chief Judge, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Gerard Marchelletta, Jr. appeals the dismissal of his first amended complaint and the denial of his Federal Rule of Civil Procedure 59(e) motion to alter judgment and for leave to amend his first amended complaint. The district court dismissed Marchelletta's first amended complaint because it was a shotgun pleading and alternatively for failure to state a claim, failure to exhaust administrative remedies, and on qualified and absolute immunity grounds. The court then denied his Rule 59(e) motion on grounds of undue delay and bad faith.

## I. BACKGROUND

The civil action that led to this appeal was filed by Marchelletta after he was convicted of federal tax crimes and later exonerated. He sued several defendants who played a part in his investigation and prosecution. Because the district court set out the facts of this case in its order dismissing the first amended complaint, Marchelletta v. Bergstrom, No. 1:14-CV-02923-ELR, 2016 WL 10537558, at *3–13 (N.D. Ga. Feb. 25, 2016), we will recount only the ones necessary to resolve the issues in this appeal.

## A.  FACTS[1]

In 2014 Marchelletta filed suit against eight defendants who had investigated and prosecuted him for felony tax crimes.  His first amended complaint alleges eleven Bivens and state law tort claims against:  two IRS agents, Patricia Bergstrom and Andrew Martin; three prosecutors with the United States Attorney's Office, Paul Monnin, Justin Anand, and Randy Chartash; one ICE agent, Kimberly Sellers; one FBI agent, Mark Sewell; and one confidential informant, Shawn McBride.  For ease of reference, we will refer to the three prosecutors as the Prosecutor Defendants and the IRS, ICE, and FBI agents as the Law Enforcement Defendants.

### 1.  The Underlying Criminal Action

In April 2007 a federal grand jury indicted Marchelletta, his father, and the bookkeeper of their family business for felony tax fraud and conspiracy.  A jury convicted Marchelletta on three counts.  He appealed.  We reversed and remanded with instructions to enter judgment of acquittal on the first count, and for a new trial on the second count, but we affirmed on the third count.  See United States v. Kottwitz, 614 F.3d 1241, opinion withdrawn in part, 627 F.3d 1383 (11th Cir.

---

[1] These "facts" come from the allegations in Marchelletta's first amended complaint, which the district court dismissed.  Because this case is on appeal from a motion to dismiss, we accept all well-pleaded allegations and draw reasonable inferences in the light most favorable to Marchelletta.  See Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003). That does not mean, of course, that what we take as facts for present purposes actually are facts.

3

2010).  Marchelletta petitioned for panel rehearing, seeking to have his conviction on the third count set aside as well.  While that petition was pending, he filed in the district court a motion for a new trial because he had discovered what he believed was evidence of government misconduct, including Brady violations, trial perjury, subornation of perjury, and witness intimidation.  We granted the rehearing petition and reversed and remanded the conviction on the third count for a new trial on other grounds.  See Kottwitz, 627 F.3d at 1384–85.  That mooted Marchelletta's motion for a new trial based on the alleged government misconduct.

The United States Attorney's Office announced that it would retry the second and third counts, and at about that same time, Marchelletta filed a FOIA action against the IRS and United States Customs Service that yielded 90,000 pages of documents relating to the criminal investigation of him.  According to Marchelletta, the prosecution had disclosed only 25,000 pages of documents during pretrial discovery, so he filed a "Motion to Dismiss the Indictment for Outrageous Government Misconduct," which the district court denied.  The district court ultimately dismissed the remaining counts against Marchelletta based on a negotiated agreement between him and the government.

2.  Allegations of Government Misconduct

The first amended complaint claims there was government misconduct before and after Marchelletta's convictions.  First, it claims misconduct regarding

4

the assessment of his income tax returns, alleging that Bergstrom "either individually or in concert" with the other defendants intentionally obstructed a correct assessment of his tax returns. Second, it claims that Bergstrom, Sellers, and Monnin recruited "rogue Union operatives" from a carpenters union to conduct illegal activities against Marchelletta's company and family.

Third, it claims that Bergstrom tried to cover up misconduct by telling other IRS agents to obstruct Marchelletta's access to the files he sought in his FOIA action. When the IRS did release the files, Marchelletta received previously undisclosed evidence showing: that Bergstrom had obtained unauthorized access to grand jury materials from Sellers; that Bergstrom and Sellers had committed perjury to obtain a conviction against him; and that Bergstrom had concealed memoranda of witness interviews containing exculpatory information.

Finally, much of the first amended complaint centers on claims that the Defendants fabricated evidence by cobbling together parts of undisclosed customs reports into a "composite forgery" designed to conceal exculpatory evidence. During discovery in the federal tax case, Marchelletta received six customs reports. Later, in response to his FOIA request, he received eighteen customs reports. He alleges that the sixth customs report from discovery was in fact a combination of two customs reports that were undisclosed prior to his FOIA request, and that the

5

pages from those two reports were arranged to appear to be from a single report, yielding a "composite forgery."

## B.  PROCEDURAL HISTORY

Marchelletta filed his initial complaint in September 2014, and after the Defendants moved to dismiss, he sought an extension of time to file an amended complaint.  He filed the operative first amended complaint in May 2015.

### 1.  The First Amended Complaint

Marchelletta's first amended complaint contains 11 counts, most of which are not at issue in this appeal.[2]  All that are at issue here are two Bivens claims. The first asserts that "[a]ll of the Defendants" violated Marchelletta's right to receive exculpatory information as required by Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).  It avers that the Prosecutor Defendants and the Law Enforcement Defendants had a duty to produce Brady material and that they violated that duty by suppressing 65,000 pages of undisclosed documents that Marchelletta later obtained through a FOIA request.  And it alleges that had the

---

[2] In his opening brief, Marchelletta failed to discuss the majority of the claims he raised in his first amended complaint.  The government contended in its answer brief that he had abandoned those undiscussed claims, and he did not dispute that in his reply brief.  Specifically, Marchelletta failed to discuss and therefore abandoned all claims related to the alleged perjury and subornation of perjury, interference with the IRS tax process, recruitment of "rogue union operatives," and all of his state law claims.  We consider only those claims that he did address. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("Any issue that an appellant wants [us] to address should be specifically and clearly identified in the brief. . . . Otherwise, the issue — even if properly preserved at trial — will be considered abandoned.") (quotation marks omitted).

6

Defendants turned over those documents in time, he could have disproved the testimony of government witnesses, debunked the prosecution's theory of criminality, and proved that the Defendants altered evidence by cobbling together parts of undisclosed customs reports into a "composite forgery" to conceal exculpatory evidence.

The second claim at issue in this appeal asserts another Brady claim alleging that "[a]ll of the Defendants" fabricated evidence, especially the "composite forgery."

### 2. The District Court Dismisses the First Amended Complaint

The Defendants moved to dismiss on grounds of improper pleading, absolute and qualified immunity, and failure to state a claim. The district court granted their motions to dismiss. It ruled that the first amended complaint exhibited two kinds of shotgun pleading problems under the standard we set out in Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313 (11th Cir. 2015). In the alternative, the district court dismissed the first amended complaint on the merits.

On the merits, the district court ruled that the Prosecutor Defendants were entitled to absolute immunity on the claim that they suppressed and fabricated evidence. It noted that binding precedent immunizes prosecutors from suit on those kinds of claims, and that Marchelletta apparently attempted to circumvent that immunity by contending that the Prosecutor Defendants suppressed and

7

fabricated evidence before his indictment, at which time immunity would not apply. But the district court found that he had not succeeded in alleging facts plausibly stating that the suppression and fabrication occurred before he was indicted. It also noted that any such allegation would be contradicted by the fact that some of the Prosecutor Defendants did not become involved until after Marchelletta was indicted.

As to the claim that the Law Enforcement Defendants suppressed evidence, the district court ruled that they were entitled to qualified immunity. It noted that law enforcement officers have a duty not to conceal exculpatory evidence from the prosecution, but that the duty to disclose it vanishes if the officers believe that the prosecution is aware of that evidence. Because Marchelletta alleged that the Prosecutor Defendants were "personally aware" of the suppressed evidence, the district court ruled that the Law Enforcement Defendants were entitled to qualified immunity on the suppression claim.

As to the claim that the Law Enforcement Defendants fabricated evidence, the district court ruled that they were entitled to qualified immunity because Marchelletta had not alleged any facts suggesting that any of those defendants actually helped create the "composite forgery" that the fabrication claim was based upon. For that reason, he had failed to allege that they violated a clearly established constitutional right.

8

2.  Order Denying Motion to Alter Judgment and for Leave to Amend

After the district court dismissed the first amended complaint, Marchelletta timely filed a Rule 59(e) "Motion to Alter or Amend Judgment and for Leave to File the Attached Proposed Second Amended Complaint."  He attached to that motion a proposed second amended complaint.  The Defendants opposed the motion, arguing that it failed to identify a basis upon which judgment was improper or allege the existence of new evidence, which they asserted as requirements for Rule 59(e) relief.  By contrast, Marchelletta argued that to succeed on a post-judgment motion to amend he needed only to satisfy the lenient standard under Rule 15(a) for a pre-judgment motion for leave to amend.

The district court did agree with Marchelletta that "[w]hen a plaintiff seeks to amend his complaint after dismissal pursuant to Rule 59(e), courts apply the same standards as a motion for leave to amend under Rule 15 prior to dismissal." Doc. 50 at 2.  But the court denied the motion to amend anyway on undue delay and bad faith grounds.  In doing so, it noted that courts routinely find undue delay when a plaintiff seeks leave to amend more than one year after filing suit, and Marchelletta offered no reason for waiting more than 18 months after filing suit to seek leave to file a second amended complaint.  The court explained that the hundreds of pages of briefing on the motions to dismiss the original and first amended complaints had put Marchelletta on notice of the deficiencies in his first

9

amended complaint in time for him to have corrected them before judgment was entered. For those reasons the district court refused to give him "a third bite at the apple." Id. at 4.

The district court also found bad faith, noting that Marchelletta's proposed second amended complaint contained allegations that contradicted those in the first amended complaint. For example, the proposed second one alleged that the Law Enforcement Defendants suppressed documents "with no reason to believe that prosecutors had or knew of the evidence," Doc. 45-2 ¶ 54(a), while the first one had alleged that the Prosecutor Defendants were "personally aware of the existence" of that evidence, Doc. 21 ¶ 57. The district court concluded that Marchelletta had changed tack in light of its order dismissing his Brady claim on the basis that the Prosecutor Defendants knew of the allegedly suppressed evidence. The court interpreted his amendment as an attempt to "use . . . the federal courts as a forum for testing alternate legal theories seriatim," which our precedent forbids. That, the court concluded, supported a finding of bad faith.

Marchelletta appeals the dismissal of his first amended complaint and the denial of his Rule 59(e) motion.

## II. STANDARDS OF REVIEW

We review de novo the dismissal of a complaint for failure to state a plausible claim for relief. Day v. Taylor, 400 F.3d 1272, 1275 (11th Cir. 2005).

10

We review for abuse of discretion the denial of a Rule 59(e) motion to alter or amend the judgment. Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1343 & n.20 (11th Cir. 2010).

## III. DISCUSSION

### A. The District Court Properly Dismissed the First Amended Complaint

Marchelletta contends that the district court improperly dismissed his first amended complaint for shotgun pleading and for failure to state a claim. Because it does not matter to the result, we will skip over the shotgun pleading issue and address only the dismissal on the merits.

On appeal, Marchelletta's arguments against the merits dismissal focus on only two alleged acts or omissions by the Prosecutor Defendants and the Law Enforcement Defendants: (1) the suppression of exculpatory evidence, and (2) the fabrication of the so-called "composite forgery." We will address those claims in that order, starting with the Prosecutor Defendants and then turning to the Law Enforcement Defendants.

### 1. Suppression

Marchelletta does not contest the district court's ruling that the Prosecutor Defendants were entitled to absolute immunity on his suppression claim. Nor could he successfully do so. Prosecutors are absolutely immune from civil liability for suppressing exculpatory information and using fabricated evidence. See Imbler

11

v. Pachtman, 424 U.S. 409, 431 n.34, 96 S. Ct. 984, 996 n.34 (1976) (equating the suppression of exculpatory information with the use of perjured testimony and holding that both are covered by absolute immunity); see also Van de Kamp v. Goldstein, 555 U.S. 335, 339, 129 S. Ct. 855, 858 (2009) (holding that absolute immunity "extends to claims that the prosecution failed to disclose impeachment material").

To the extent the first amended complaint attempted to plead around that immunity by alleging that the Prosecutor Defendants "coordinated, strategized, and assisted in the manufacture and use of . . . false evidence in their investigative capacities," the district court ruled that those allegations were impermissibly conclusory. Marchelletta does not challenge that ruling. His suppression claim against the Prosecutor Defendants fails.

The suppression claim against the Law Enforcement Defendants also fails because they are entitled to qualified immunity, as the district court concluded. The first amended complaint alleged that the Prosecutor Defendants knew of the allegedly suppressed exculpatory evidence. That is a claim killing allegation because an investigator has "no duty to inform the prosecutor's office of exculpatory evidence that the officer has reason to believe is already known to that office." Kelly v. Curtis, 21 F.3d 1544, 1552 (11th Cir. 1994) ("The same is true of any failure of an officer to inform defense counsel or the court of exculpatory

12

evidence:  the officer has no such duty where she has reason to believe that the prosecutor is aware of that evidence.").  The prosecutors' alleged knowledge of the evidence is reason for the investigators to believe they already knew about it, at least where the first amended complaint does not say to the contrary.  And Marchelletta does not argue otherwise.  Instead, his argument is that the first amended complaint alleged that the Prosecutor Defendants knew of only one suppressed document, not all of them like the Law Enforcement Defendants.

But the first amended complaint alleges more than Marchelletta lets on. Every allegation of suppression in it names both the Prosecutor Defendants and the Law Enforcement Defendants as the suppressors.  All are jointly accused of suppression.  See, e.g., Doc. 21 ¶ 46 ("Defendants Martin, Bergstrom, Sewell, Sellers, Monnin, Anand, [and] Chartash  . . . failed to provide Marchelletta with thousands of pages of exculpatory and impeachment material . . . .") (emphasis added); id. ¶ 55 ("The prosecution team, including all of these Defendants save McBride, also failed to disclose Brady material regarding the IRS's criminal tax investigation of Marchelletta . . . ."); see also id. ¶¶ 44, 50, 54–55, 59.  An allegation that a person suppressed evidence necessarily assumes that the suppressor had knowledge of that evidence.  Contrary to Marchelletta's assertion, the district court did not fail to draw all reasonable inferences in his favor when it interpreted his allegations to indicate that the Prosecutor Defendants knew of the

13

allegedly suppressed evidence.  What Marchelletta asks us to do — for instance, to read an allegation that "[t]he prosecution team . . . failed to disclose Brady material" to refer to everyone but the Prosecutor Defendants — is to draw unreasonable inferences in his favor, which we will not do.  See Dalrymple, 334 F.3d at 995.

Because the only reasonable inference from the first amended complaint's allegation is that the Prosecutor Defendants knew of the allegedly suppressed evidence, and because the Law Enforcement Defendants had no duty to disclose that evidence in light of the Prosecutor Defendants' knowledge of it, the district court properly ruled that the Law Enforcement Defendants were entitled to qualified immunity.  See Kelly, 21 F.3d at 1552.

## 2.  Fabrication

Marchelletta's other claim involves the alleged fabrication of a "composite forgery."  He contends that the alteration of the reports comprising the composite forgery is a form of spoliation that is "indistinguishable from destruction of that same evidence."  He couples that assertion with several out-of-circuit decisions recognizing a cause of action against prosecutors for the destruction of evidence and urges us to follow suit.  If we will, he says, we will see that the district court erred in concluding that the Prosecutor Defendants were entitled to absolute immunity with respect to the composite forgery customs report.

14

Even if the production of the alleged composite forgery report is tantamount to the destruction of evidence, and even if we were to follow the rule from the cases Marchelletta cites holding that absolute immunity does not apply when a prosecutor destroys exculpatory evidence,[3] his claim still fails.  It fails because he cannot overcome the defense of qualified immunity, which shields both the Prosecutor Defendants and the Law Enforcement Defendants.  Marchelletta's out-of-circuit cases do not clearly establish anything with respect to defendants in this circuit.  See Hall ex rel. Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 827 n.4 (11th Cir. 1997) (en banc) ("In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose.").

The only binding cases that Marchelletta cites are inapposite.  He points to three Supreme Court cases from 1935, 1942, and 1959.  See Napue v. Illinois, 360 U.S. 264, 79 S. Ct. 1173 (1959); Pyle v. Kansas, 317 U.S. 213, 63 S. Ct. 177 (1942); Mooney v. Holohan, 294 U.S. 103, 55 S. Ct. 340 (1935).  He asserts that

---

[3] Marchelletta points to a few out-of-circuit cases that allow a plaintiff to pierce absolute immunity where a prosecutor has destroyed evidence, but he fails to note that some of our sister circuits have come out the other way.  Compare, e.g., Yarris v. County of Delaware, 465 F.3d 129, 137 (3d Cir. 2006) (holding that a prosecutor is "not entitled to absolute immunity from suit for constitutional violations caused by their alleged deliberate destruction of exculpatory evidence"), with Heidelberg v. Hammer, 577 F.2d 429, 432 (7th Cir. 1978) (holding that a prosecutor is entitled to absolute immunity from suit claiming that he destroyed and falsified evidence).

15

those cases stand for the proposition that a state cannot "procur[e] a criminal conviction through the use of false testimony." But by his own account those cases are off point because the alleged misconduct here is not the "use of false testimony," but the production in discovery of an incomplete copy of two customs reports. As the government notes, the first amended complaint does not allege that the "composite forgery" document was ever introduced at trial.

Marchelletta argues in his reply brief that the rule against spoliation might fall into the "obvious clarity" category of qualified immunity cases, but that argument is too little, too late. See Sappupo, 739 F.3d at 683 (holding that an argument advanced by an appellant for the first time in a reply brief is abandoned).

In sum, the district court was right to dismiss the first amended complaint on absolute and qualified immunity grounds. The Prosecutor Defendants are entitled to absolute immunity on the suppression claims and the Law Enforcement Defendants are entitled to qualified immunity on those claims due to the Prosecutor Defendants' knowledge of the allegedly suppressed evidence. As to the spoliation claim, both the Prosecutor Defendants and the Law Enforcement Defendants are entitled to at least qualified immunity (if not absolute immunity for the prosecutors) because there is no caselaw from the Supreme Court, this Court, or the Georgia Supreme Court holding that this type of "alteration" of evidence by a prosecutor or law enforcement officer violates a constitutional right. Given the

16

preference for "resolving immunity questions at the earliest possible stage in litigation," Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 536 (1991), the district court was right to dismiss the first amended complaint.

B.  The District Court Properly Denied Marchelletta's Rule 59(e) Motion

Turning to Marchelletta's Rule 59(e) motion to alter judgment and for leave to amend, the parties dispute the applicable standard.  The defendants contend that we must apply the ordinary Rule 59(e) standard, which requires that the movant show "newly-discovered evidence or manifest errors of law or fact," Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007), while Marchelletta contends that he need only satisfy the more lenient standard that governs a pre-judgment Rule 15(a) motion for leave to amend, in which case "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a).  We need not decide that question because we agree with the district court that Marchelletta cannot satisfy even the lenient Rule 15(a) standard and we affirm on that basis.

The district court denied Marchelletta's motion on grounds of undue delay and bad faith.  These are proper grounds for denial of a Rule 15(a) motion for leave to amend.  See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) (holding that a court may exercise its discretion to deny a motion for leave to amend for reasons like "undue delay, bad faith or dilatory motive . . . futility of

17

amendment, etc."). The district court properly denied the motion to amend on bad faith grounds and we affirm on that basis.

As the district court explained, Marchelletta made several allegations in the proposed second amended complaint, which was attached to his Rule 59(e) motion, that directly contradicted allegations in the first amended complaint that the court had dismissed. The proposed second amended complaint alleged that the Law Enforcement Defendants withheld documents "with no reason to believe that the prosecutors had or knew of the evidence." But the first amended complaint had alleged the opposite, affirmatively stating that the Prosecutor Defendants were "aware of the existence" of that evidence. The district court concluded that Marchelletta had obviously changed tack to plead around the dismissal of his Brady claim against the Law Enforcement Defendants on grounds that the prosecutors were aware of the documents in question. The proposed amendment was, in the court's words, an attempt to "use . . . the federal courts as a forum for testing alternate legal theories seriatim."

Marchelletta argues that one factual discrepancy is insufficient to support a finding of bad faith. Maybe so or maybe not. It doesn't matter because there's more than one flat out contradiction here. The proposed second amended complaint also alleges that the Law Enforcement Defendants lied to the Prosecutor Defendants about the confidential informant status of Defendant McBride in order

18

to suppress impeachment evidence.  Yet the first amended complaint had alleged that the Prosecutor Defendants "knew that prosecution witness McBride was a confidential government informant . . . and lied to the Court and defense counsel about it."  Like the other contradiction, this one also sought to change the facts to revive a <u>Brady</u> claim against the Law Enforcement Defendants that had been dismissed the first time around.

It was not an abuse of discretion for the district court to deny Marchelletta's Rule 59(e) motion on bad faith grounds.  Not even he denies that the proposed second amended complaint contains about-face allegations that seek to evade the district court's reasons for dismissing the first amended complaint.  Instead, Marchelletta argues that because Federal Rule of Civil Procedure 8(d) permits plaintiffs to plead alternative theories, "it is difficult to conceive how pleading inconsistent facts in an amended complaint can constitute bad faith."  To the contrary, that is easy to conceive in the context of this case.  It is one thing to present inconsistent theories of relief in one pleading.  It is another thing entirely to test a legal theory on one set of alleged facts, lose and suffer an adverse judgment, and then use the first decision as a roadmap to alter the alleged facts, and then re-plead post-judgment.  Our caselaw does not "countenance the old sporting theory of justice or the use of the federal courts as a forum for testing alternate legal theories <u>seriatim</u>."  <u>Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.</u>, 470

19

F.3d 1036, 1042 (11th Cir. 2006) (quotation marks omitted); <u>see also</u> <u>Addington v.</u>

<u>Farmer's Elevator Mut. Ins. Co.</u>, 650 F.2d 663, 667 (5th Cir. Unit A July 1981)

(holding that plaintiff's "attempt[ ] to establish a new factual basis and legal

theory" a year after the suit was filed supported denying a motion to amend).

**AFFIRMED.**